UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America,

v.                                                    Crim. No. 5:11-cr-50-1

Ronald Willie Newton

## REPORT AND RECOMMENDATION
(Doc. 141)

Ronald Willie Newton, proceeding *pro se*, has filed a motion pursuant to 28

U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed in this court following

Newton's plea of guilty to two violations of the Controlled Substances Act and one

violation of the Gun Control Act.  Newton seeks to vacate these convictions, contending

that the court lacked subject-matter jurisdiction due to a defective indictment.  I

recommend that Newton's motion (Doc. 141) be DENIED for the reasons set forth

below.

## Background

### I.      Indictment and Change of Plea Proceeding

On May 26, 2011, an Indictment was filed in this district charging Newton,

together with codefendants Terry Bahner, Lestly Westcott, and Bethany Pastuszak, with

violations of the Controlled Substances Act, 21 U.S.C. § 841 and the Gun Control Act, 18

U.S.C. § 922.  (Doc. 14.)  In Count One, Newton was charged with engaging in a

conspiracy with Terry Bahner and others, both known and unknown, to knowingly and

intentionally distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a).  (*Id.* at 1.)
In Count Two, Newton was charged with one count of possession with intent to distribute
cocaine, in violation of 21 U.S.C. § 841(a).  (*Id.* at 2.)  In Count Three, Newton was
charged with possession of a firearm in connection with a drug trafficking offense, in
violation of 18 USC § 924(c)(1); and in Count Four, he was charged with possession of
the same firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).
(*Id.* at 3–4.)  Count Five charged Newton with aiding and abetting in the commission of a
false statement to a federally licensed firearms dealer in connection with the acquisition
of a firearm by Bethany Pastuszak, in violation of 18 U.S.C. §§ 2 and 922(a)(6).  (*Id.* at
5.)

Following the denial of a motion to suppress his oral statements, Newton agreed to
plead guilty to Counts One, Two, and Three of the Indictment.  In a written Plea
Agreement filed on February 14, 2012, Newton acknowledged his guilt and stated that he
understood the nature of the charges filed against him and their potential penalties.  (Doc.
56 at ¶¶ 3, 5.)  The Plea Agreement accurately set forth the statutory penalties for each
count of conviction, and Newton acknowledged that he entered into the Agreement of his
own free will, with a full understanding of the charges, and having had a full opportunity
to consult with his lawyer prior to entering into the Agreement.  The Agreement set forth
Newton's constitutional rights, and Newton acknowledged that by pleading guilty, he
was waiving those rights.  (*Id*. at ¶ 5.)  Newton also acknowledged that he was fully
satisfied with the representation provided to him by Attorney Natasha Sen.  (*Id.* at ¶ 14.)

2

In exchange for Newton's pleas of guilty, the government agreed to (1) move to dismiss the remaining counts of the Indictment and refrain from prosecuting Newton for other crimes known to the government, (2) recommend that Newton be sentenced at the low end of the applicable sentencing guideline range in the event Newton was found to be a career offender under USSG §4B1.1, and (3) receive a three-level reduction for acceptance of responsibility under USSG §3E1.1.  (*Id.* at ¶ 10.)

On February 14, 2012, Newton appeared before Chief United States District Judge Christina Reiss to enter his pleas of guilty to the three offenses pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  (Doc. 149.)  During the Rule 11 proceeding, the Chief Judge engaged Newton in the full colloquy required by the rule.  Under oath, Newton stated that he had read and reviewed the Plea Agreement and that he had a full opportunity to discuss the Agreement with Attorney Sen before he signed it.  (*Id.* at 5.) Newton stated under oath that no one had threatened or pressured him into entering into the Plea Agreement.  (*Id*. at 6.)  Newton stated that he had no questions concerning the Agreement, and that he fully understood its contents.  (*Id.* at 6–7.)  The Chief Judge carefully explained Newton's constitutional rights to him, as required by Rule 11, and Newton acknowledged that he understood he was waiving those rights by pleading guilty. (*Id*. at 11.)  After the government stated the elements of each offense, the Chief Judge explained to Newton the statutory maximum penalties for each count, including the five-year mandatory minimum term of imprisonment required by his plea to the violation of 18 U.S.C. § 924(c) alleged in Count Three.  The government then provided a statement of facts to be proven in the event the matter proceeded to trial.  (*Id.* at 15–18.)  Newton

acknowledged the accuracy of those facts, stating that he was pleading guilty because he was in fact guilty of the offenses to which he was pleading guilty. (*Id.* at 18.) Chief Judge Reiss accepted Newton's pleas of guilty, concluding that they were entered into knowingly and voluntarily, with full understanding of the nature of each charge and the consequences of his plea. Judge Reiss concluded that Newton was fully competent and capable of entering into an informed plea. (*Id.* at 19.) The court ordered the preparation of a presentence report in anticipation of sentencing.

## II.    Presentence Report and Sentencing

A Presentence Report ("PSR") was submitted, and concluded that Newton faced an advisory sentencing guideline range of 262 to 327 months imprisonment. (PSR ¶ 88.) The PSR further concluded that Newton was a career offender under USSG §4B1.1(c), as a consequence of his 2008 prior conviction for aggravated assault and conspiracy to commit murder and his 2010 conviction for aggravated assault, all sustained in the Commonwealth of Pennsylvania's Courts of Common Pleas. (PSR ¶¶ 53–54.) Classification as a career offender yielded an offense level of 32. (PSR ¶ 44.)

The PSR also accorded Newton a three-level reduction for acceptance of responsibility, which placed him at offense level 29 and criminal history category VI. Multiple count analysis and the mandatory 60 months consecutive term as a result of the conviction for the § 924(c) violation yielded the adjusted advisory range of 262 to 327 months. (PSR ¶ 88.)

Attorney Sen filed a Sentencing Memorandum on behalf of Newton, objecting to the career-offender determination. (Doc. 107.) Sen argued that the prior aggravated

assault convictions were not predicate offenses triggering the application of the career-offender provisions of the Sentencing Guidelines.  Alternatively, Attorney Sen contended that a downward departure or a variance from the advisory sentencing guideline range was warranted and a sentence within the range of 132 to 144 months was appropriate. (Doc. 107 at 30.)  The government argued in support of the Sentencing Guideline calculation set forth in the PSR, but also supported a small variance from the sentencing range, asserting that a 240-month sentence was appropriate.  (Doc. 108 at 17.)

The sentencing hearing was held on August 8, 2012.  (Doc. 150.)  The hearing included an extensive legal argument about whether Newton's prior aggravated assault convictions in Pennsylvania were predicate offenses sufficient to trigger the application of the career-offender provisions of the Sentencing Guidelines.  The court ultimately concluded that the Pennsylvania aggravated-assault statutes matched the Model Penal Code's definition of aggravated assault sufficiently to warrant the conclusion that Newton's convictions were for "crimes of violence," as that phrase is defined in §4B1.2. (*Id.* at 79–80.)  Accordingly, the court concluded that the advisory sentencing guideline range was 262 to 327 months, consistent with the conclusions of the PSR.  (*Id.* at 83.)

With regard to the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), the court noted at the sentencing hearing that it was required to impose a sentence that reflected the nature and circumstances of the offense and the history and characteristics of the defendant.  (*Id.* at 84.)  The court also noted that, in an effort to impose a sentence that was sufficient but not greater than necessary to reflect the seriousness of the offense, it needed to impose a just punishment which promoted respect for the law, afforded

5

adequate deterrence, protected the public from the defendant, and provided the defendant with needed health care and educational and vocational training. (*Id.* at 85.) Chief Judge Reiss carefully reviewed these factors, and concluded that a significant variance from the Sentencing Guideline range was warranted. Newton was sentenced to 100 months in prison on Counts One and Two, to run concurrently with each other, and a 60-month term on Count Three, to be served consecutively to Counts One and Two, for a total term of imprisonment of 160 months, together with a 10-year term of supervised release. No direct appeal of the sentence was pursued.

## III.    Motion to Vacate

Newton has filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255 on the grounds that the court lacked subject-matter jurisdiction. (Doc. 141.) First, Newton asserts that the court lacked subject-matter jurisdiction because Counts One and Two of the Indictment failed to allege a quantity of cocaine. (*Id.* at 5.) Second, Newton contends that the court lacked subject-matter jurisdiction because 21 U.S.C. § 841(b)(1)(C), a penalty provision referenced in both Counts One and Two, prohibits only the distribution of gamma hydroxybutyric acid, not cocaine. (*Id.*) Third, Newton argues that the court "lacked subject[-]matter jurisdiction to enter any judgment or enhance sentence on [C]ount [Three] charging 18 U.S.C. § 924(c)(1)(A)(i), being subject to [C]ounts [One and Two] omissions and [i]ntervening legislation." (*Id.*) Newton's last claim is that the government violated the requirements of 21 U.S.C. § 851, which permits an enhanced statutory sentence upon proof of a prior drug felony conviction. (*Id.* at 6.)

## Analysis

### I.    Standards Governing Section 2255 Motions

A properly filed motion under Section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to enter a judgment; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255.  Accordingly, relief is available under Section 2255 only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error . . . that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'"  *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (citation omitted). Claims that were not raised on direct appeal may not be raised on collateral review unless the defendant establishes (1) cause for the procedural default and ensuing prejudice, or (2) actual innocence.  *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).

### II.    Prison Mailbox Rule

The government contends that Newton's motion should be dismissed because it is untimely under 28 U.S.C. § 2255(f)'s one-year statute of limitations.  The government explains that Newton's judgment became final on August 23, 2012, and his motion was due one year from that date.  The motion was not received by the Clerk of Court, however, until September 3, 2013.  The argument fails because, under the "prison mailbox rule," a *pro se* document is deemed filed at the time it was delivered to prison authorities for forwarding to the court.  *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Where it is unclear when a *pro se* state prisoner mailed his or her habeas petition, the

court assumes that the petition is filed on the day it is signed and dated." *Porter v. Greiner*, No. CV 00-6047 SJ VVP, 2005 WL 3344828, at *7 (E.D.N.Y. Nov. 18, 2005). Newton's motion was signed and dated on August 4, 2013 (Doc. 141 at 7), within one year of his judgment becoming final on August 23, 2012. Thus, Newton's motion is timely.

The government counters that Newton "has not sought to take advantage of the prison mailbox rule." (Doc. 144 at 3 n.2.) This argument fails, as "the burden is on prison authorities to prove the date a prisoner delivered his documents to be mailed. Absent evidence to the contrary in the form of prison logs or other records, [the court] will assume [the petitioner's] motion was delivered to prison authorities the day he signed it." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam) (citation omitted). There being no evidence that Newton did not sign and date the motion on August 4, 2013, I conclude that the motion was delivered to prison authorities on that date, and thus the motion is timely.

## III.    Procedural Bar to Newton's Claims

The government argues that Newton's claims are procedurally barred because he failed to pursue a direct appeal of them. As noted earlier, claims that were not raised on direct appeal may not be raised on collateral review unless the defendant establishes (1) cause for the procedural default and ensuing prejudice, or (2) actual innocence. *Thorn*, 659 F.3d at 231. Stated differently, "[i]n order to conserve judicial resources and to respect the law's interest in the finality of judgments, claims that were not raised on direct appeal may not be raised on collateral review unless the petitioner establishes both

cause for the procedural default and actual prejudice resulting from the error, or establishes that the failure to consider the claims will result in a fundamental miscarriage of justice." *Maxwell v. United States*, Nos. 92 CR 1147(KMW), 10 CV 2383(KMW), 2012 WL 1191901, at *3 (S.D.N.Y. Apr. 10, 2012). Therefore, Newton must establish cause and prejudice for the failure to bring his current claims on direct appeal to the Second Circuit. Establishing cause requires Newton to demonstrate "some objective factor external to the defense" that impeded his ability to appeal. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008). An "objective factor" may include "the state's creation of an external impediment, situations in which the factual or legal basis for a claim was not reasonably known by the petitioner, or ineffective assistance of counsel." *Maxwell*, 2012 WL 1191901, at *3; *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (stating that "cause" is "something external to the petitioner" that "cannot fairly be attributed to him"). To establish prejudice, Newton must demonstrate that the constitutional errors raised in the motion actually and substantially disadvantaged his defense so that he was denied fundamental fairness. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (miscarriage of justice exists if alleged constitutional error "probably resulted in the conviction of one who is actually innocent").

Newton has failed to establish either cause for his failure to file an appeal, or prejudice resulting from that failure. With no evidence of a justifying cause, and because, as discussed more fully below, assertion of the arguments on appeal would not have afforded Newton any relief, the court should deem his challenges to the conviction

and sentence procedurally barred.  *See, e.g.*, *Gerbacio-Linch v. United States*, No. 00 CR. 1123, 04 Civ. 9674, 2006 WL 2109434, at *5 (S.D.N.Y. July 28, 2006) (denying section 2255 motion where petitioner "offers no explanation for his failure to raise on appeal his claim of insufficient evidence").

## IV.     Waiver of Claims

As explained above, Newton pled guilty to Counts One, Two, and Three of the Indictment.  No challenge has been raised to the knowing and voluntary nature of these guilty pleas.  "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (citations omitted).  "Thus, after a judgment of conviction has been entered upon the defendant's plea of guilty, the defendant may not raise nonjurisdictional challenges either on direct appeal, or by collateral attack under § 2255." *Id.* (citations omitted).

In order to sustain a challenge to the district court's jurisdiction, the defendant who has plead guilty must establish that the face of the indictment discloses that the count(s) to which he plead guilty failed to charge a federal offense. *Id.*; *United States v. Santelises*, 476 F.2d 787, 788 (2d Cir. 1973) (*coram nobis* attack on guilty plea based on alleged failure of indictment to allege violations of federal law must be rejected "'unless [the indictment] is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted'") (quoting *United States v. Trollinger*, 415 F.2d 527, 528 (5th Cir. 1969)); *United States v. Smith*, 407 F.2d 33, 34 (2d Cir. 1969).

Newton does not establish this fact.  Instead, he makes a generalized assertion that the Indictment was defective while challenging the government's evidence through reliance on incorrect legal assumptions or erroneous factual assertions.  Clearly, a district court has original subject-matter jurisdiction over "all offenses against the laws of the United States."  18 U.S.C. § 3231.  Even if Newton were able to establish that the Indictment was defective, a defective indictment does not deprive a court of jurisdiction.  *United States v. McIntosh*, 704 F.3d 894, 901 (11th Cir. 2013) (citing *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

But, as discussed below, Newton fails to show any defect in the Indictment's language.  Each offense properly alleges a violation of the corresponding federal statute by tracking the statutory language.  As the Court of Appeals explained in *Hayle*:

> The requirement that the alleged jurisdictional defect be apparent from the face of the indictment reflects the line between issues that go to the court's power to entertain the prosecution and those that go merely to the government's ability to prove its case.  If the indictment alleges all of the statutory elements of a federal offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution, not to the jurisdiction of the court to entertain the case or to punish the defendant if all of the alleged elements are proven.

*Hayle*, 815 F.2d at 882.

For these reasons, Newton's claim that the district court lacked subject-matter jurisdiction lacks merit.  Accordingly, by his guilty pleas, Newton has waived all objections to these counts in the Indictment.

V.     **Substantive Merit of Claims**

Newton asserts that his conviction must be vacated because 21 U.S.C. §

841(b)(1)(C) "alleges schedule I & II gamma hydroxybutric (not cocaine) thus appears

[Newton] is being held under former laws repealed upon which intervening legislation

ousted all jurisdiction once conferred therein."  (Doc. 141 at 5.)  This claim fails on both

factual and legal grounds.  Counts One and Two of the Indictment allege the possession

with intent to distribute *cocaine* and a conspiracy to distribute *cocaine*, not gamma

hydroxybutyric.  (Doc. 14 at 1–2.)  Cocaine is a Schedule II controlled substance and the

statutory penalty for these offenses (where no specific quantity was alleged) is found at

21 U.S.C. § 841(b)(1)(C).  Newton's case has nothing to do with gamma hydroxybutyric,

and thus, Newton's reference to gamma hydroxybutyric to challenge his conviction fails.

In a related claim, Newton asserts that the Title 21 violations to which he pled

guilty are constitutionally defective because the weight of the cocaine was not alleged in

the Indictment.  This argument also fails.  The Second Circuit has held that drug quantity

is not an element of a charge under 21 U.S.C. §§ 841(a)(1) and 846, as long as the type

and quantity of drugs involved in the charged crime are not used to impose a sentence

above the statutory maximum.  *See United States v. Thomas*, 274 F.3d 655, 659, 663–64

(2d Cir. 2001) (en banc).  Contrary to Newton's argument, Section 841 of Title 21of the

United States Code prohibits the distribution or possession with intent to distribute *any*

detectable amount of cocaine.  *Avilez-La Guardia v. United States*, 46 F. App'x 38, 39

(2d Cir. 2002) (summary order) ("Drug offenses under 21 U.S.C. § 846 are subject to

sentencing under the graduated penalty provisions of 21 U.S.C. § 841(b).  If the offense

involved any detectable quantity of cocaine, the offender is subject to a maximum prison term of 20 years.  21 U.S.C. § 841(b)(1)(C).").  Newton was sentenced to 160 months, a sentence well within the 240-month maximum penalty for possession to distribute any detectable amount of cocaine and conspiracy to commit such an offense.

Finally, Newton's claim regarding the application of 21 U.S.C. § 851 is frivolous. Section 851 provides for an enhanced statutory penalty under 21 U.S.C. § 841(b) where a defendant has a prior drug felony conviction and appropriate notice is given.  Section 851 does not apply, however, to the career-offender provisions of the Sentencing Guidelines. *United States v. Ramirez*, 454 F.3d 380, 381 (2d Cir. 2006) (citing *United States v. Whitaker*, 938 F.2d 1551, 1552 (2d Cir. 1991)).  Newton's statutory sentencing range was not enhanced because of a prior drug felony conviction, and thus Section 851 does not apply here.  Moreover, Newton's assertion of an "ambush" is meritless as his prior assault convictions were detailed in the PSR and were the principal topic of sentencing litigation.  Newton had actual and prior notice of the use of these convictions.  *See Whitaker*, 938 F.2d at 1553 ("We also note that Whitaker's prior convictions are detailed in his presentence report and that he had ample notice prior to sentencing that these convictions would be considered.").

13

## **Conclusion**

Based on the foregoing, I recommend that Newton's motion to vacate his

conviction and sentence be DENIED.


Dated at Burlington, in the District of Vermont, this 2nd day of January, 2014.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after
service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge
and all parties, written objections which shall specifically identify those portions of the
Report and Recommendation to which objection is made and the basis for such
objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).
Failure to timely file such objections "operates as a waiver of any further judicial review
of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15,
16 (2d Cir. 1989).